UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-21333-BLOOM/Otazo-Reyes

LEADING EDGE MARKETING, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

## ORDER GRANTING PRELIMINARY INJUNCTION AS TO CERTAIN DEFENDANTS

**THIS CAUSE** is before the Court on Plaintiff Leading Edge Marketing Inc.'s Motion for Preliminary Injunction ECF No. [9], ("Motion). On May 10, 2023, the Court held a Hearing on the Motion where Plaintiff supported its request for a preliminary injunction against Defendants identified on Schedule "A" to the Complaint as numbered 1 to 9, 11 to 17, 19 to 21, 23, 24, 26, 28 to 32, 36, 37, 39 to 43, 45 to 49, 51 to 56, 59 to 62, 64 to 67, 69 to 72, 75 to 77, 79, 81 to 83, 86, 88 to 92, 94, 95, 97, 98, 104 to 107, 109 to 118, 122 to 126, 128, 131 to 136, 139, 140, 143 to 146, 148, 149, 151, 152, 154, 155, 157, 159 to 162, 164, 165, 167, 170, 173, 180 to 395, 397 to 676, 678 to 687, 689 to 708, 710 to 726, 728 to 764, 766 to 804, 806 to 814, 816, 817, 819, 820, 822 to 824, 826 to 836, 838, 840, 841, 843 to 847, 850, 851, 853, 854, 858 to 870, 872 to 911, 913 to 915, 917 to 926, 928, 929, 931 to 933, 935 to 938, 942 to 947, 949 to 953, 955 to 960, 962 to 968, 970 to 995, 997 to 1000, 1003, 1004, 1007 to 1038, and on Exhibit 1 attached hereto ("Defendants").

On April 12, 2023, the Court entered a Temporary Restraining Order ("TRO") ECF No. [11]. The TRO set a hearing on the Plaintiff's Motion for Preliminary Injunction for April 26,

2023. The hearing was continued to May 10, 2023, to allow Defendants to be served and to file a response to the Motion. *See* ECF No. [22].

Prior to the hearing on the Motion for Preliminary Injunction, Plaintiff filed Proofs of Service on the Defendants[1] pursuant to the Court's Order Authorizing Alternate Service of Process. ECF No. [13]. Plaintiff's proofs of service affirmed that the Plaintiff served process on the Defendants by emailing these Defendants the text of the summons issued in this action and the link http://www.sriplaw.com/notice where the full text of the Complaint, exhibits thereto, Temporary Restraining Order, and the full text of all other documents filed in this action are available to view and download in compliance with this Court's Order on Alternate Service. Plaintiff has been unable to serve Defendants identified on Schedule "A" to the Complaint as 10, 18, 22, 25, 27, 33, 34, 35, 38, 44, 50, 57, 58, 63, 68, 73, 74, 78, 80, 84, 85, 87, 93, 96, 99, 100 to 103, 108, 119 to 121, 129, 130, 137, 138, 141, 142, 147, 150, 153, 156, 158, 163, 166, 168, 169, 174 to 179, 1001, 1002, 1005 and 1006 (the "Unserved Defendants").[2]

In order for a preliminary injunction to issue, the nonmoving party must have notice and an opportunity to present its opposition to the injunction. Fed. R. Civ. P. 65(a)(1); *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 434 n.7 (1974). Since the Unserved Defendants have not been afforded notice, the Court declines to impose a preliminary injunction on those Unserved Defendants.

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4)

---

[1] ECF Nos. [17], [35], [36], [37], [38], [39], [40], [42], [43], [45], [46], [61], [63], [66], [67], [69], [70], [71].
[2] Plaintiff expects to receive the data from the marketplaces that would allow it to serve the Unserved Defendants pursuant to the Court's Order on Alternate Service. ECF No. [13].

that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

The Court heard argument from Plaintiff and reviewed the evidence presented to the Court on the Motion. Having considered the evidence and the arguments, the Court grants Plaintiff's Motion for Entry of a Preliminary Injunction in its entirety against Defendants listed in Exhibit 1 attached hereto.

The Court finds that it has personal jurisdiction over the Defendants since the evidence presented on the Motion shows that the Defendants have been served with process pursuant to this Court's order authorizing alternative service. The Court also determines that these Defendants directly target their business activities toward consumers in the United States, including Florida, and specifically that the Defendants are reaching out to do business with Florida residents by operating one or more commercial, interactive internet stores on internet marketplaces where Florida residents can purchase products bearing infringing and/or counterfeit trademarks belonging to the Plaintiff.

This Court further determines that the temporary restraints previously granted in the TRO should remain in place through the pendency of this litigation and that issuing this Preliminary Injunction is warranted under Federal Rule of Civil Procedure 65. Evidence submitted in support of this Motion and in support of Plaintiff's previously granted Motion for a Temporary Restraining Order establishes that Plaintiff has a likelihood of success on the merits; that no remedy at law exists; and that Plaintiff will suffer irreparable harm if the injunction is not granted.

The Court concludes that Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing counterfeits, reproductions, or colorable imitations of the products using the PROEXTENDER trademark, U.S. Reg. No. 3206305 for "Adult Sexual Aids, namely Penis Extenders" in International Class 10, registered February 6, 2007.

The potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products, if such relief is not issued. The public interest favors issuance of the temporary restraining order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

Further, under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing counterfeits and infringements of Plaintiff's trademarks. See *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless the restraint of those assets ordered in the TRO is continued.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

A.  A preliminary injunction is entered against Defendants listed in Exhibit 1 attached hereto, as follows:

1. Defendants, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined during the pendency of this case:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the PROEXTENDER Mark, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing and/or using the Mark, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the PROEXTENDER Mark, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any Defendant, including, but not limited to, any assets held by or on behalf of any Defendant;

2. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Preliminary Injunction shall immediately discontinue, until further Order of this Court, the use of the PROEXTENDER Mark, or any confusingly similar trademarks, on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs. This order is limited to the Defendants' listings using the PROEXTENDER Mark, or any confusingly similar trademarks, on

or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs, and does not apply to the Defendants' entire e-commerce stores.

3. Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Preliminary Injunction shall immediately discontinue, until further Order of this Court, the use of the PROEXTENDER Mark, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet based e-commerce stores registered, owned, or operated by any Defendant, including the Internet based e-commerce stores operating under the Seller IDs.

4. Each Defendant shall not transfer ownership of the Seller IDs during the pendency of this action, or until further order of the Court.

5. Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Seller IDs and shall take all steps necessary to retrieve computer files relating to the use of the Seller IDs that may have been deleted before the entry of this Order.

6. Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, Alibaba.com Hong Kong Limited, which operates the AliExpress.com platform ("AliExpress"), Zhejiang Ant Small and Micro Financial Services Group Co., Ltd. ("Ant Financial Services"), AliPay (China) Internet Technology Co. Ltd., Alipay.com Co., Ltd., and Alipay Singapore E-Commerce Private

Limited (collectively, "Alipay"), Amazon Payments, Inc. ("Amazon"), Dunhuang Group which operates the DHgate.com and DHPay.com platforms, Camel FinTech Inc, ContextLogic, Inc., which operates the Wish.com website ("ContextLogic"), PayPal, Inc. ("PayPal"), eBay, Inc. ("eBay"), Payoneer, Inc. ("Payoneer"), WorldFirst UK Limited ("WorldFirst"), or PingPong Global Solutions Inc. ("PingPong"), Joom, SIA (Latvia) ("Joom"), Stripe, Inc. and/or Stripe Payments Company ("Stripe"), Walmart, Inc. ("Walmart"), and their related companies and affiliates shall continue the restraints imposed under the TRO until further Order of this Court and, to the extent not already done, (i) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; (ii) divert those restrained funds to a holding account for the trust of the Court.; (iii) identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the Seller IDs, store numbers, infringing product numbers, and/or the e-mail addresses identified on Schedule "A" to the Complaint and Exhibit 1 attached hereto, as well as any other accounts of the same customer(s); (iv) identify all other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Order;

7. Upon receipt of notice of this Preliminary Injunction, Defendants and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms receiving notice of this Order, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, WorldFirst, PingPong, Joom, Stripe, Walmart, and their related companies and affiliates, shall to the extent not already done, provide Plaintiff's counsel with all data that details: (i) an accounting of the total funds

restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to; (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained; (iii) the historical sales for the Defendants' listings that are alleged to infringe Plaintiff's trademarks, copyrights and patent; and (iv) the true identities along with complete contact information including email addresses of all Defendants.

8. The funds restrained by this Preliminary Injunction shall not be transferred or surrendered by any Defendant, financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, WorldFirst, PingPong, Joom, Stripe, Walmart, and their related companies and affiliates for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

9. No Defendant whose funds are restrained by this Preliminary Injunction may transfer said funds in possession of any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, AliExpress, Ant Financial Services, Alipay, Amazon, Dunhuang Group which operates the DHgate.com and DHpay.com platforms, Camel FinTech Inc, ContextLogic, PayPal, eBay, Payoneer, WorldFirst, PingPong, Joom, Stripe, Walmart, and their related companies and affiliates restrained by this Order to any other financial institution, payment processor, bank, escrow service, money transmitter or marketplace website without the express authorization of this Court.

10. Any Defendant or financial institution account holder subject to this Preliminary Injunction may petition the Court to modify the asset restraint set out in this Order.

11.   This Order shall apply only to the Seller IDs listed on Schedule "A" to the Complaint and Exhibit 1 attached hereto, associated e-commerce stores and websites, and any other seller identification names, e-commerce stores, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting the PROEXTENDER Mark and/or unfairly competing with Plaintiff.

12.   This Preliminary Injunction shall remain in effect during the pendency of this case and until further Order of the Court. Any Defendants that are subject to this Order may appear and move to dissolve or modify the Preliminary Injunction upon notice to Plaintiff pursuant to the Federal Rules of Civil Procedure and Local Rules of the Southern District of Florida.

13.   The Court determines that the bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00) posted by Plaintiff as evidenced by the Notice of Filing Bond, ECF No. [15], is sufficient and shall remain with the Court until a final disposition or until this Preliminary Injunction is dissolved or terminated.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 10, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record